UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA/ SEATTLE

KATIE J. C.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 3:25-cv-05966-TLF

ORDER REVERSING DEFENDANT'S DECISION TO DENY BENEFITS

…

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of defendant's denial of plaintiff's application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). AR 26. The parties have consented to the jurisdiction of a Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 1-1, Complaint.

On December 4, 2020, plaintiff protectively filed the applications for SSI and DIB. AR 28, 126. Plaintiff's alleged date of onset was January 1, 2012 and date last insured was December 31, 2016. Dkt. 15 at 2; AR. 28, 126.

The first ALJ hearing in this case was conducted on May 31, 2022. AR 67-120; after the Appeals Council overturned the ALJ's decision, a second hearing was held on May 21, 2024. AR 121-143.

The Administrative Law Judge (ALJ) issued a decision on September 18, 2024. AR 25-43. The ALJ found plaintiff had the following severe impairments: major depressive order and attention deficit hyperactivity disorder. AR 28. The ALJ determined that plaintiff had the following residual functional capacity (RFC):

> "the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can understand, remember, and apply detailed but not complex instructions; she can perform predictable tasks; she can be exposed to occasional workplace changes; she can tolerate occasional interaction with supervisors, co-workers, and the general public; and she cannot work in a fast-paced, production type environment."

AR 32.

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). If the evidence would reasonably support affirming the ALJ's decision, or reversing it, the Court may not substitute its own judgment for the ALJ's. *Ferguson v. O'Malley,* 95 F.4th 1194, 1199 (9th Cir. 2024).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope

of the Court's review. *Id.* The Court may determine the ALJ's reasoning by drawing reasonable inferences and determining an implied finding from the record. *Ferguson v. O'Malley,* 95 F. 4th 1194, 1200 (9th Cir. 2024).

## DISCUSSION

### A. Medical evidence

Under the applicable regulations, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b); *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Supportability means the extent to which a medical source supports their opinion by explaining the relevant medical evidence. *Woods,* 32 F.4th at 791-92. Consistency means the extent to which an opinion is consistent with the evidence from other medical and non-medical sources in the claim. *Id.* at 792. The ALJ cannot reject an opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Id.*

There is "a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022).

#### 1. Dr. Kimberly Wheeler, Ph.D.

On October 28, 2020, Dr. Wheeler diagnosed plaintiff with major depression, recurrent, severe with anxious distress. AR 1202. During the evaluation, Dr. Wheeler noted that plaintiff's concentration was "utterly broken due to emotional distress" (AR 1205) and noted plaintiff was "deeply, profoundly depressed" and has been for almost 20 years. AR. 1204.

She opined plaintiff was markedly limited in her ability to: understand, remember and persist in tasks by following detailed instructions; adapt to changes in a routine work setting; ask simple questions or request assistance; and communicate or perform effectively in a work setting. AR 1203. Dr. Wheeler found plaintiff would be severely limited in her ability to: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision and complete a normal workday and work week without interruption from psychologically based symptoms. *Id*. Plaintiff also reported a suicide attempt by overdose in 2013 and a suicidal gesture with a handgun in 2019. *Id*.

On November 11, 2020, Brian VanFossen, Ph.D., from the Washington Department of Social and Health Services, reviewed Dr. Wheeler's evaluation and determined that the diagnoses is supported by available objective medical evidence. AR 1689. He also opined that the ratings were supported by the available medical evidence. *Id*.; *see also* AR 40.

On August 15, 2024, Dr. Wheeler again evaluated diagnosed plaintiff with major depression, recurrent, severe without psychotic features; social anxiety; attention deficit hyperactivity disorder, primarily inattentive type, by history. AR 2160. Plaintiff continued to report severe depression, sleeping ten to sixteen hours per day, rarely leaving home,

and not wanting to be around people. AR 2159-60. Dr. Wheeler observed dysphoric mood, blunted affect, clipped and brief speech, that plaintiff had difficulty maintaining her train of thought and was easily distracted. AR 2162. She again found severe or marked limitations in several areas of functioning. AR 2160-61. She also noted plaintiff was cooperative, showed normal thought processes, thought content, orientation, function of knowledge, abstract thought, insight, judgment, and memory. *Id*. Dr. Wheeler further noted that "[t]he level of depression she describes is encompassing and unrelenting and shows no improvement despite consistent treatment since 2020 evaluation." AR 2161.

The ALJ found Dr. Wheeler's opinions unpersuasive because Dr. Wheeler "provided no support for the ratings on either form" and her opinions were unsupported by her clinical findings and observations. AR 40. The ALJ relied on Dr. Wheeler's normal findings concerning plaintiff's thought process, thought content, orientation, perception, memory, fund of knowledge, abstract thought, insight, and judgment all within normal limits. AR. 40. The ALJ found the opinions inconsistent with plaintiff's reported improvement in concentration while taking Adderall and with clinical findings of unimpaired concentration at other appointments. *Id*.

The ALJ further held that "the evaluating psychologist reviewed only a DSHS intake form (Ex 12F/6) before the first evaluation and only the 2020 evaluation and just 8 months of treatment notes from Cascade before the second. She therefore failed to see the claimant's reports of good functioning and good response to treatment." *Id*.

Although an ALJ may "permissibly reject[ ] … check-off reports that [do] not contain *any* explanation of the bases of their conclusions," *Crane v. Shalala*, 76 F.3d

251, 253 (9th Cir. 1996) (emphasis added), here Dr. Wheeler did provide an explanation for her opinions.

Dr. Wheeler documented plaintiff's presentation during both evaluations and identified specific clinical observations concerning plaintiff. AR 1204-05, 2162. The ALJ only discussed Dr. Wheeler's findings of certain aspects as "normal", but the examinations contained both normal findings and significant abnormalities. Treatment records cannot be cherry-picked; the ALJ must consider a particular record of treatment in light of the overall diagnostic record. *Ghanim v. Colvin,* 763 F.3d at 1164.

Dr. Wheeler's opinions are also supported by the record. For example, on April 17, 2020, plaintiff reported that she did not feel her medications were working and that she continued to experience patterns of depression, crying spells, staying in bed most of the day, and suicidal ideation. AR 1176. Plaintiff reported having no will, no drive, and no reason to be here, although she stated that she would not hurt herself because of her boys. *Id*. On May 15, 2020, plaintiff reported, "I just can't get motivated to do anything I would rather just stay in bed." AR 1172. On May 20, 2020, plaintiff reported that any small activity was exhausting. AR 1170. The record also documents that following the 2019 handgun incident, plaintiff was described as "suicidal, unsafe in community." AR 601. Plaintiff has continuously had suicidal ideations and issues with the effectiveness of her medication, including Adderall. *See, e.g.*, AR 2119-20, 2128.

The improvement in concentration with Adderall does not address Dr. Wheeler's other limitations that were related to concentration, such as attendance, punctuality, completing a normal workday, adapting to changes, and communicating effectively. AR. 1203, 2159-62. The ALJ also relied on the fact that Dr. Wheeler's evaluations were

conducted by phone. AR 39. As the ALJ conducted an administrative hearing by telephone, it is unclear why (and the ALJ does not explain why) the telephonic format would render Dr. Wheeler's observations unreliable. *Id*.

The ALJ did not adequately explain, with substantial evidence, why Dr. Wheeler's opinions were unsupported or inconsistent with the record. The ALJ's reliance on isolated normal findings and some improvement in concentration did not address the abnormal findings documented by Dr. Wheeler or the longitudinal evidence of continuing mental health symptoms.

**2. Omar Gonzalez, PA-C**

ALJ also found Certified Physician's Assistant Gonzalez's June 14, 2021 opinion unpersuasive. AR 29-30, 1489-99. PA-C Gonzalez assessed limitations that would restrict plaintiff to a claimant to light to medium work, with standing/walking limited to 2-4 hours in an 8-hour workday, for 60-90 minutes at a time. AR 1496-97. The ALJ explained that PA-C Gonzalez's opinion was inconsistent with his examination findings and the "record as a whole, which establishes no significant limitations in functioning due to a physical impairment." AR 30.

As for supportability, the ALJ noted that the examination did not demonstrate the degree of physical limitation reflected in PA-C Gonzalez's opinion. PA-C Gonzalez opined that plaintiff could stand or walk for only two to four hours in an eight-hour workday, but his examination of plaintiff's gait and station was normal. AR 29, 1492, 1496. Similarly, although AP-C Gonzalez assessed lifting and carrying limitations based on his upper-extremity examination, that examination was largely unremarkable. Other than a positive Tinel's sign at the wrist and some reduced sensation to light touch in the

hands, PA-C Gonzalez documented normal upper-extremity range of motion, strength, and reflexes. AR 1493-94, 1497. He opined that plaintiff was limited in squatting, kneeling, climbing, and crawling, referring to his “squat and knee” examinations. AR 1496-97.

But plaintiff was able to squat (“Claimant can perform activity frequently”), and her knees had normal range of motion without deformity or tenderness. *Id.* Her lower-extremity muscle bulk and strength were also normal. AR 1496-97. The ALJ therefore had a reasonable basis for concluding that the examination findings did not support the degree of standing, walking, lifting, carrying, and postural restrictions assessed by PA-C Gonzalez. AR 29-30. PA-C Gonzalez assessed limitations concerning exposure to vibration, moving parts, and machinery, but identified the basis for those restrictions only as “Exam/interview, diagnoses listed above.” AR 1497. The ALJ noted that PA-C Gonzalez did not identify a diagnosis corresponding to those restrictions or specify what portion of the examination or interview supported them. AR 30, 1489-99. The lack of an explanation connecting the clinical findings to those particular restrictions further supported the ALJ’s conclusion that the opinion was not adequately supported. See 20 C.F.R. § 404.1520c(a)-(b), (b)(2), (c)(1).

The ALJ also addressed consistency with the longitudinal record. PA-C Gonzalez noted bilateral carpal tunnel syndrome “per examination and history.” AR 29, 1496. But, as the ALJ explained, plaintiff’s carpal tunnel syndrome and tenosynovitis were treated successfully with surgery and a cortisone injection and did not result in significant ongoing functional limitations. AR 28 (citing AR 551, 560, 562, 564, 566-67, 573, 575, 579, 1741-42). The ALJ therefore concluded that the longitudinal evidence did not

support the degree of exertional and manipulative limitation assessed by PA-C Gonzalez. AR 29-30.

Plaintiff points to the abnormal findings in PA-C Gonzalez's examination, including the reduced cervical and lumbar range of motion, positive Tinel's sign, and diminished light-touch sensation, as evidence supporting his opinion. Dkt. 15 at 6; AR 1491-97. Those findings provide some support for physical limitations, but they do not require the ALJ to accept the degree of limitation assessed by PA-C Gonzalez. The ALJ considered the findings and the evidence based on the examination as a whole and the longitudinal record. AR 28-30.

The ALJ's reasoning addresses both supportability and consistency and is supported by evidence in the administrative record. *See Woods*, 32 F.4th at 792. The Court may not substitute its judgment for the ALJ's where the evidence reasonably supports the ALJ's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Accordingly, the ALJ's decision regarding PA-C Gonzalez's opinions was supported by substantial evidence.

**3. Other Medical Evidence**

Plaintiff's opening brief identifies "[o]ther medical evidence" and "[p]rior administrative medical findings" ("PAMFs") but does not adequately explain the relevance of that evidence or meaningfully address the ALJ's reasoning concerning it. Dkt. 15 at 6-10. Plaintiff largely summarizes portions of the record without explaining how the evidence establishes error in the ALJ's decision or why the ALJ's findings are unsupported. Bare assertions and summaries, without developed analysis or legal argument, are insufficient to establish harmful error. *Greenwood v. Fed. Aviation*

*Admin*., 28 F.3d 971, 977 (9th Cir. 1994); *Putz v. Kijakazi*, 2022 WL 6943095, *2 (9th Cir. Oct. 12, 2022). Accordingly, the Court does not find reversible error based on plaintiff's discussion of the other medical evidence or PAMFs.

**B. Plaintiff's statements about symptoms and limitations**

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a plaintiff's credibility, the ALJ must determine whether plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear, and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But an ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain). Treatment records cannot be cherry-picked; the ALJ must consider a particular record of treatment in light of the overall diagnostic record. *Ghanim v. Colvin,* 763 F.3d at 1164.

An ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Smartt v. Kijakazi,* 53 F.4th 489, 499 (9th Cir. 2022); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Evidence that medical treatment helped a claimant "return to a level of function close to the level of function they had before they developed symptoms or signs of their mental disorders . . . can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (internal quotations omitted). *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[S]ome improvement" in a person's symptoms "does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). *But see Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (finding "a gradual improvement in [claimant's] functioning" a specific, clear, and convincing reason where it undermined the testimony given).

While ALJs are not required to "perform a line-by-line exegesis," "'providing a summary of medical evidence ... is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Lambert v. Saul*, 980 F.3d 1266, 1277–78 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[T]o satisfy the substantial evidence standard, the ALJ must...explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony." *Ferguson,* at 1200 (emphasis in original).

Here, the ALJ found that plaintiff's medically determinable mental impairments could reasonably be expected to produce the symptoms she alleged. AR 33. The ALJ also found plaintiff's statements concerning the intensity, persistence, and limiting effects of

those symptoms "not fully consistent with the medical and other evidence." AR 33. The ALJ identified improvement with medication, periods when plaintiff did not seek treatment, and plaintiff's activities. AR 40.

The ALJ's reliance on improvement with medication was not a clear and convincing reason to support rejection of the full extent of plaintiff's allegations. The record contains evidence of improvement at various points — for example, plaintiff reported in October 2014 that she was more motivated, hopeful, was doing daily activities; and in October 2015 she reported that her mood was generally good, focus and attention were good on Adderall. AR 34 (citing AR 1305, 1310). In October 2016, she reported that Adderall improved her concentration and focus and that her depression was in good control. AR 34 (citing 1295). Likewise, in November 2020 and February 2021, plaintiff reported improvement in mood and attention. AR 35-36 (citing AR 1220). In April 2022, her attention span and concentration became excellent after dose of Adderall was increased. AR 1694.

But the record also shows continuing and recurrent symptoms that would support plaintiff's statements about the severity of her symptoms and limitations. In January 2018, she reported the recurrence of low energy, even though her attention span was still good. AR. 1287. In December 2020, plaintiff cancelled at the last minute her appointment with her mental health care provider because she stayed in her room for weeks, her family was not happy with her, and she stated she could not mentally or physically come in that day. AR 1222. In January 2022, plaintiff reported that she was "really down and depressed," sleeping and crying a lot, not showering, and not leaving the house. AR 1683. Plaintiff continued to report depression in 2022 through 2024. AR

2021-2130. In April 2024, she continued to struggle with depressed mood even while acknowledging she's on a high dose of stimulants. AR 2024. In August 2024, Dr. Wheeler observed dysphoric mood, blunted affect, clipped speech, difficulty maintaining her train of thought, and easy distractibility. AR 37.

Although the ALJ identified evidence of improvement, the decision does not adequately explain why that improvement was inconsistent with plaintiff's allegations of disabling episodic depression or her testimony concerning her inability to sustain regular work activity. *Holohan*, 246 F.3d at 1205; *Wellington*, 878 F.3d at 876.

The ALJ also relied on the fact that plaintiff did not seek treatment during 2013. AR 33. But the ALJ did not adequately explain why the absence of treatment during that year established that plaintiff was capable of full-time work, particularly in light of the record documenting significant depression before and after that period. Plaintiff reported depression beginning at age 15 and later described spending much of her time sleeping and staring at the wall, social isolation, and lack of interest in activities. *See, e.g.*, AR 1206. Although "t]he fact that 'symptoms wax and wane in the course of treatment' is to be expected," the Ninth Circuit has cautioned against relying on isolated periods of relative improvement without considering the longitudinal record. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *Ghanim*, 763 F.3d at 1164.

The ALJ identified activities including buying and setting up a home, working on her parents' farm, crafting, participating in a rodeo, caring for her mother after surgery, shopping with a friend, holding yard sales, and watching her sister's children. AR 38. Those activities provide some evidence that plaintiff retained functioning, and the ALJ could consider them. But the decision does not explain how instances of such activities

demonstrated an ability to sustain full-time competitive employment. *See Orn*, 495 F.3d at 639. Many of the activities occurred during periods when plaintiff reported doing relatively well. For example, the record reflects that plaintiff worked on her home during 2015, when she reported improved mood and functioning. AR. 1307-08.

The ALJ also relied on plaintiff's testimony that she sometimes went as long as eleven days without showering and sometimes remained in bed for days. AR 38. The ALJ found that plaintiff's hygiene was never worse than fair and was usually adequate or good when assessed, and that the record did not contain a significant number of failed or cancelled appointments. AR 38.

This reasoning does not adequately address the nature of plaintiff's allegations. Plaintiff described episodic periods of severe depression during which she could remain in bed and neglect her hygiene for days. AR 91, 112-14, 131-32, 137-38. The existence of adequate hygiene during visits with mental health care services providers does not necessarily contradict allegations concerning functioning during periods when plaintiff was unable to leave home. The ALJ therefore did not adequately explain why these records were inconsistent with the particular limitations plaintiff alleged, given that mental health conditions typically have symptoms that may wax and wane. See *Ghanim*, 763 F.3d at 1164.

The ALJ summarized evidence that reasonably could support the RFC but did not sufficiently connect that evidence to the specific allegations being rejected. *Lambert*, 980 F.3d at 1277-78. The ALJ did not provide sufficiently specific, clear, and convincing reasons supported by substantial evidence for rejecting plaintiff's symptom testimony.

**C. Lay witness evidence**

An ALJ must provide germane reasons for rejecting or discounting the statements of a lay witness. *Fain v. Bisignano,* __ F.4th __, No. 25-3219, 2026 WL 2795427 (9th Cir. Sept. 18, 2026). The applicable regulation states that an ALJ is "not required to articulate" how he or she evaluated evidence from non-medical sources such as family members, "using the same criteria that apply to the analysis of medical sources." 20 C.F.R. § 404.1502(e). The purpose of lay witness testimony, as suggested by its name, is not to provide "specific vocational limitations," like a medical opinion would. Lay witness evidence requires consideration because the evidence is often from eyewitnesses, such as family members, who can independently attest to "observations of the claimant's pain and other symptoms." *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993). As the Ninth Circuit recognized in *Fain v. Bisignano,* "germane reasons" is not an onerous standard for the ALJ to meet.

Here, plaintiff's mother, Kathleen Comer, completed a third-party function report in April 2021. AR 469-76. She reported, among other symptoms, extreme mood swings, isolation, sleeping for days, poor hygiene, crying, limited interaction with others, little household activity, the need for medication reminders, and difficulty dealing with stress. AR 469-76. The ALJ expressly considered the report but found that it did not support greater limitations because it "largely matched" plaintiff's testimony and was "not completely consistent with the record as a whole." AR 41. Consistency between independent observations from a family member and a claimant's testimony may corroborate the claimant's reported symptoms. See *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). Because the Court concludes that the ALJ did not adequately

explain why plaintiff's symptom testimony was inconsistent with the record, the ALJ's rejection of plaintiff's mother's observations is not a germane reason, nor is the reasoning supported by substantial evidence.

**D. Whether the ALJ erred in determining plaintiff's RFC**

Plaintiff argues that the ALJ did not include all impairments in the hypothetical to the vocational expert. Plaintiff contends the ALJ should have explained discrepancies between the medical opinions of the consulting doctors and the limitations described in the RFC.

The burden of proof is on the Social Security Administration at step five of the five-step review process, to show the claimant can perform other jobs in the national economy that exist in significant numbers. *Thomas v. Barnhart,* 278 F.3d 947, 955 (9th Cir. 2002). In doing so, the Commissioner has relied on testimony from a V.E. and the Dictionary of Occupational Titles (DOT). 20 C.F.R. § 404.1520(a)(4)(v), § 404.1560, § 404.1566(e); SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). An ALJ may take administrative notice of any reliable job information. *See Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005).

The ALJ is required to determine the appropriate restrictions in formulating the RFC. *See* 20 C.F.R. § 416.946. The ALJ's determination of plaintiff's RFC must be affirmed so long as the ALJ applied the proper legal standard and there is substantial evidence to support the ALJ's decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The Court may determine the ALJ's reasoning by drawing reasonable inferences and determining an implied finding from the record. *Ferguson v. O'Malley,* 95 F.4th 1194, 1200 (9th Cir. 2024).

Either the ALJ should have discussed the limitations in the decision and given reasons for excluding them, or the hypothetical to the V.E. should have included these limitations. *See Leach v. Kijakazi,* 70 F.4th 1251, 1255, 1257-58 (9th Cir. 2023) (hypothetical did not accurately reflect plaintiff's limitations; therefore the V.E.'s testimony was unsupported and had no evidentiary value at step five, and the RFC was erroneous). Under Social Security Ruling 96-8p, if an ALJ's "RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." At step five, the burden is on the Commissioner to show that the plaintiff can perform particular jobs available in the national or regional economy. If the relevant limitations from a medical opinion are omitted but the omission is not explained, and these limitations are not included in the RFC, the Commissioner's step five burden of proof is not satisfied. *See Leach* at 1255-58.

Here, because the ALJ omitted the limitations found by Dr. Wheeler and Dr. VanFossen, and omitted limitations testified to by plaintiff, from the hypothetical to the V.E. and the RFC without proper reasoning supported by substantial evidence, and failed to give any "meaningful explanation . . . this court [has] nothing with which to assess its legitimacy." *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 884 (9th Cir. 2006).

The ALJ's step-five finding depended on the RFC. AR 41-42. The vocational expert testified that a person with that RFC could perform laundry worker I, stores laborer, and industrial cleaner. AR 41-42. At the 2022 hearing, however, the vocational expert testified that an individual who missed at least part of two days of work per month or who was off task more than ten percent of the workday would be unable to sustain competitive employment. AR 118. At the 2024 hearing, the vocational expert further

testified that additional restrictions involving no public contact and working from home, or two additional fifteen-minute breaks per day, could eliminate competitive employment. AR 139-40.

Because the ALJ erred in evaluating evidence and did not account for the limitations assessed by Dr. Wheeler, the full extent of plaintiff's symptom testimony, or the observations contained in plaintiff's mother's report, the vocational expert's testimony based on the existing RFC is unreliable and the ALJ committed reversible error.

**E. Harmless error.**

An error that is inconsequential to the non-disability determination is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id; see also Carmickle v. Comm'r. Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008). This is because an incomplete RFC leads to incomplete hypothetical questions presented to the VE. *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012).

The errors identified above are not harmless. The ALJ's evaluation of plaintiff's symptom testimony and Dr. Wheeler's opinions affected the RFC. The RFC, in turn, formed the basis for the hypothetical presented to the vocational expert and the ALJ's step-five finding. AR 32, 41-42. The vocational testimony establishes that additional limitations concerning attendance, off-task behavior, such as crying spells, breaks, and ability to leave home could affect the availability of competitive employment. AR 117-19, 139-40.

Based on a review of the record, the Court concludes that the record is not free from important and relevant conflicts, such as conflicts in the medical evidence. Therefore, this matter should be reversed for further administrative proceedings, including a de novo hearing, not with a direction to award benefits. *See Stout, 454 F.3d at 1056.*

## CONCLUSION

For these reasons, the ALJ's decision is reversed and remanded. On remand, the ALJ must: (1) reevaluate the medical opinions and prior administrative medical findings, including Dr. Wheeler's 2020 and 2024 opinions and the confirmation of those opinions by Dr. VanFossen; (2) reevaluate plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms and provide specific, clear, and convincing reasons, supported by substantial evidence, for any portions of plaintiff's testimony that are rejected; (3) review the third-party function report submitted by Kathleen Comer and provide germane reasons, if any, supported by substantial evidence if the ALJ discounts or rejects her observations; (4) and reassess plaintiff's RFC based on the properly evaluated evidence; and, if necessary, obtain additional vocational-expert testimony based on a hypothetical that includes all limitations supported by the record.

…

Dated this 21st day of September, 2026.

Theresa L. Fricke

Theresa L. Fricke
United States Magistrate Judge